## In the Matter of Hollister, Bankrupt.[*]

*(District Court, D. Kentucky.   July 20, 1880.)*

1. BANKRUPTCY—RIGHT OF PARTNERSHIP CREDITOR TO PARTICIPATE IN INDIVIDUAL ASSETS.—A partnership creditor cannot participate in the distribution of individual assets until individual debts are paid in full.

2. BANKRUPTCY — REV. ST. § 5070, — SURETY. — Section 5070, U. S. Rev. St., settles the question that the payment of a part of a debt by a surety does not entitle him to prove the same as a debt against the principal until the creditor is paid in full.

3. CONTRACT—COMPOSITION—CONSTRUCTION.—Where a composition proposition contained a provision that upon any claims which the bankrupt should pay thereunder, upon which he was merely surety, he was "to have the right to collect and receive, towards helping me [him] to comply with the [composition] proposition, from my [his] principal or his estate, for remuneration therefor, or a proper *pro rata* therefrom, for what may be paid " under such composition, and such proposition was accepted by a creditor for whom the bankrupt was surety, and the principal was in bankruptcy at the same time, *held*, that the composition agreement gave the surety a contract right to prove the payment thereunder as a debt against the principal's estate, upon which he will receive a *pro rata* dividend ; and that the creditor must credit her debt with such payment and prove only for the balance.

In Bankruptcy.   Hearing upon exceptions to register's report.

Hollister, the bankrupt, was a member of the firm of Hollister, Jones & Co.   This firm did business in Cincinnati, and when Hollister went into bankruptcy it took the benefit of the Ohio insolvent law.   It was indebted to the Northern Bank of Kentucky upon a claim upon which William H. Leathers was surety.   Mrs. Bettie Fisher was the holder of a note made by Hollister as principal, and Leathers as surety, for

[*]Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati, O., Bar.

$9,000. Leathers went into bankruptcy about the same time that Hollister did. He effected a composition with his creditors at 20 cents on the dollar. Both the bank and Mrs. Fisher proved their claims upon which he was surety against him, and received their dividend. Leathers now makes claim against Hollister's estate for—*First*, the amount received by the bank, from his composition, upon the claim upon which he was surety for the firm of Hollister, Jones & Co.; *second*, the amount received by Mrs. Fisher, from his composition, upon the note upon which he was surety for Hollister individually. Hollister's estate is not sufficient to pay his individual debts. Leathers' proposition for composition contained the following agreement: "And upon any of the debts or claims against me upon which I pay as aforesaid, but upon which I am, in fact, merely a surety, I am to have the right to collect and receive, towards helping me to meet and comply with the above proposition, from my principal or his estate, for remuneration therefor, or a proper *pro rata* therefrom, for what may be paid as aforesaid on such debt or claim, whenever I am really only a surety."

The register reported against both of the above-mentioned items of Leathers' claim. To this report Leathers excepted.

*R. C. Gray*, for Leathers.

*W. H. Makoy*, for Mrs. Fisher.

BARR, D. J. This cause is heard upon the register's opinion on the claim of William H. Leathers.

There is not a doubt about the rule that a partnership debt is not entitled to a dividend out of individual assets until the individual debts are paid in full. The Northern Bank debt is against the firm, and, as the individual assets will not pay the individual debts, the bank can get nothing, and of course Leathers cannot get a dividend for this debt.

The payment of part of the debt of Mrs. Fisher, or part of the debt of any other creditor, by Leathers, as surety of Hollister, does not itself give him any right to prove the payment as a debt against Hollister's estate. The creditor must first be paid in full before Leathers is entitled to anything.

If Mrs. Fisher proves her entire debt, and Leathers is allowed to prove for the same debt to the extent of his payment, there would be, to that extent, double proof of the same debt. If Mrs. Fisher is not allowed to prove for her entire debt until she is satisfied, she would lose the benefit of her double security. The language of section 5070 settles this question. I think the case of *Downing* v. *Traders' Bank*, 2 Dillon, 136, also reported in 11 B. R. 372, is not an authority sustaining a contrary view. The district court had only allowed the Traders' Bank to prove for the balance after deducting the amount which had been paid by Saunders Bros. for their release, and, upon appeal to the circuit court, this was reversed, and the whole debt allowed to be proven. Saunders Bros. were not parties, and the intimation of the court that they might be entitled to the dividend upon the amount they had paid for a release was undoubtedly based upon the idea that the execution of the notes might be a satisfaction as of *their date*, which was *before* the bankruptcy of Downing. We know of no case which sustains the view taken by Leathers' counsel as to the meaning of section 5070.

It is, however, contended that Leathers is entitled to his dividend on partial payments by reason of the terms of the composition which was accepted by his creditors.

At the time of the acceptance of Leathers' composition both he and Hollister were in bankruptcy. The agreement for a composition contained this provision, viz.: "And upon any debts or claims against me upon which I (Leathers) pay as aforesaid, but upon which I am in fact merely a surety, I am to have the right to collect and receive, towards helping me to meet and comply with the above proposition, from my principal or his estate, for remuneration therefor, or a proper *pro rata* therefrom, for what may be paid as aforesaid on such debt or claim, whenever I am really only a surety."

We have seen that, without this provision, Leathers could not have proven for the amount of composition, and that he would not be entitled to anything until the creditor, who held both parties—bankrupts—for his debt, was fully paid.

But it seems to me that a fair construction of the language of the composition, as quoted, gives Leathers a contract right to the proper *pro rata* dividend which the creditor would get on the debt partially paid by Leathers from the estate of the principal debtor. The suggestion that this provision of the composition simply means what the law would have given without it is not sustained by the language.

There is nothing in the language which indicates that Leathers was only to have his *pro rata* from the estate of the principal debtor, *after* the creditor had received his entire debt, and in *that event only.* The language is that "I am to have the right to collect and receive, towards helping me to meet and comply with the above proposition," etc. This would indicate that this right was an immediate and absolute one.

The cases *In re Ellerhorst, etc.*, 5 B. R. 144; *Ex parte Talcott*, 9 B. R. 502; and *In re Butler*, 18 B. R. 497, referred to in the excellent brief of the counsel for Mrs. Fisher, are only to the point of deciding the law independent of any contract. I do not doubt the correctness of these decisions, but I conceive the parties themselves have made a contract which changes the rule. The effect of this contract is not to allow a double proof of the same debt, or any part of it.

The opinion of the register, so far as it sustains the exceptions to the debt paid the Northern Bank, is sustained; and also sustained in allowing the $48.56. But the claim for $810.52, paid C. W. Miller, should have been allowed Leathers, and also his claim for $1,823.88, paid Mrs. Bettie Fisher; but these claims should be credited by the $557.88 as allowed in his proof of debt.

C. W. Miller's debt must be credited by $810.52, and Mrs. Bettie Fisher's debt by $1,823.88. As these sums are allowed to be proven by Leathers, a double dividend must not be paid.